## CIRCUIT COURT OF LOUDOUN COUNTY

NBS Loudoun Gateway IV, L.L.C.

v.

Commonwealth Transportation
Commissioner of Virginia

November 4, 2003

Case No. (Chancery) 23333

BY JUDGE JAMES H. CHAMBLIN

This cause came before the Court on October 31, 2003, for hearing on the Motion for Emergency Hearing filed by the Plaintiff, NBS Loudoun Gateway IV, L.L.C., (NBS) to temporarily enjoin the Defendant, Commonwealth Transportation Commissioner of Virginia (referred to herein sometimes as Commissioner or VDOT) from constructing or maintaining any aboveground utilities in violation of a restrictive covenant until it lawfully condemns the restrictive covenant pursuant to its power of eminent domain and complies with all applicable procedures governing such exercise. At the conclusion of NBS's evidence, the Defendant moved to strike the evidence. The motion was taken under advisement, and the hearing was recessed pending a ruling on the motion to strike.

After consideration of the evidence, the argument of counsel, and NBS's memorandum, the motion to strike is granted and the Plaintiff's motion for a temporary injunction is denied.

NBS owns a parcel of land containing approximately seventeen acres on Route 28 in Loudoun County on which is located a large "Class A" four-story office building. The parcel is a part of an office park. All the parcels in the office park are subject to a restrictive covenant requiring that all utility services on any parcel shall be located underground. The restrictive covenant may be enforced by the office park owners association.

On September 12, 2003, the Commissioner caused to be recorded a Certificate of Take by which certain portions of the land of NBS were taken for utility easements to be conveyed to Dominion Virginia Power Company and Verizon Virginia, Incorporated, as part of an improvement of Route 28. The Certificate of Take does not refer to the restrictive covenant requiring underground utilities.

Subsequently, aboveground utilities have been installed in the areas taken by VDOT for utility easements. At least four aboveground poles have been installed by Virginia Power. The poles run along Route 28 in front of the office building.

The restrictive covenant requiring underground utilities is not mentioned in the appraisal that was prepared on behalf of VDOT for the condemnation. The appraiser determined that there was no damage to the remainder of the property arising out of any violation of the restrictive covenant. Therefore, it was never mentioned in the appraisal. His opinion is that the installation of overhead power lines does not reduce the fair market value of the land taken for the utility easements. The utility easement was valued at $14,600.00, being a part of the total of $36,600.00 estimated by the Commissioner in the Certificate of Take for all the land taken.

NBS offered expert testimony that the restrictive covenant requiring underground utilities enhances the value of the property, mainly for aesthetic reasons. NBS takes the position that the aboveground utilities reduce the value of the property not only because of aesthetic reasons, but also because the building is less attractive to tenants with overhead power lines in front of it. NBS feels that the restrictive covenant is part of the overall covenants on the property so as to make the "Class A" office building attractive to tenants such as Fortune 500 companies. There are no other aboveground utilities in the office park. NBS asserts that the poles already placed aboveground by Virginia Power obstruct the view from the office building.

The parties agree, and it is amply supported by the tariffs approved by the Virginia State Corporation Commission introduced into evidence by the Commissioner, that it is more expensive to place utilities under ground that it is to place them aboveground. NBS's expert appraiser admitted that, if utilities are put in overhead (not underground) without any cost to the landowner, then a benefit is given to the landowner. Of course, nothing prevents NBS from paying Virginia Power or Verizon to place the utilities underground.

The hearing was scheduled on the Motion for Emergency Hearing filed by NBS on October 15, 2003. The motion seems to be seeking all the relief requested in the Bill for Injunctive Relief filed on October 15, 2003, but, at the hearing, counsel for NBS made it clear that it is seeking a temporary

injunction declaring the Certificate of Take invalid because of alleged failures on the part of the Commissioner to follow the eminent domain statutes in taking the property.

Specifically, NBS alleges that VDOT has not condemned the restrictive covenant and did not make a bona fide offer prior to the taking as required by the statutes. It asserts that an injunction is the proper remedy when a condemnor unlawfully enters onto property.

NBS agrees that VDOT may allow the installation of aboveground utilities on the condemned property in violation of the restrictive covenant, but only if the property is taken in accordance with the statutory power of eminent domain and just compensation is paid. *See Minner v. Lynchburg*, 204 Va. 180, 191 (1963).

I agree with NBS that a restrictive covenant is a right in property and constitutes an interest in land. This is clearly the holding in *Meagher v. Appalachian Elec. Power Co.*, 195 Va. 138, 145-46 (1953). Certainly the breach of a restrictive covenant can be enjoined without a showing of damage. *Id.*

NBS argues that the Commissioner did not follow the eminent domain statutes because the Certificate of Take does not identify the restrictive covenant as a property interest taken or damaged. I do not agree. Va. Code § 33.1-123 requires that the Certificate of Take shall set forth the description of the land or interest therein taken or damaged, and the owner or owners, if known. The Certificate of Take clearly describes the land taken, and on the first page thereof, certifies that the sum paid into Court is estimated by the Commissioner "to be the fair value of the land hereinafter described, or interest therein, and damages to the remainder, if any, owned … by [NBS], which the [Commissioner] has directed to be taken. . . ." The statute does not require that any restrictive covenants applicable to the land taken be described in the Certificate of Take. I think that "or interest therein, and damages to the remainder, if any, owned by [NBS]. . . ." as set forth in the Certificate of Take clearly advises NBS that the property taken includes not just the land itself but also all the interest therein, including restrictive covenants, owned by or for the benefit of NBS. There is nothing in the Certificate of Take to indicate that the Commissioner agreed to take the land subject to the restrictive covenant. The reason for the take of the property at issue, *i.e.* for utility easements, clearly put NBS on notice of the restrictive covenant issue. There is no claim that NBS was unaware of the restrictive covenant. It could not make such a claim because the restrictive covenant is a matter of record.

*Meagher* is not a condemnation case. It does not hold that a restrictive covenant must be identified in a Certificate of Take. It merely holds that a

restrictive covenant is a property right, and, if an entity with the power of eminent domain acquires property and desires to use it in violation of an applicable restrictive covenant, then that entity must exercise its power of eminent domain and provide compensation, if warranted, arising from the violation. If this case were the *Meagher* case (NBS were to have voluntarily conveyed the land to VDOT, and VDOT then permitted aboveground utilities to be installed) and VDOT sought to exercise the power of eminent domain to take the interest represented by the restrictive covenant, then perhaps NBS would have an argument that the restrictive covenant must be mentioned in the Certificate of Take. But this is not the case. Here the Commissioner recorded the Certificate of Take to take the land and all the interest that NBS has in the land, including a benefit from a restrictive covenant. That is clear from the language of the Certificate of Take. Under these circumstances, I conclude there is no requirement to identify a restrictive covenant in the Certificate of Take.

NBS also complains that the Commissioner did not make a bona fide offer to acquire the land before recording the Certificate of Take because the restrictive covenant is not mentioned in the VDOT appraisal and the Commissioner offered nothing for the restrictive covenant. NBS must base this argument on either (1) the restrictive covenant is a property interest that must be described, just as the land taken must be described in the Certificate of Take, or (2) the restrictive covenant must necessarily have some value, the Commissioner failed to have it appraised, and the Commissioner failed to pay money into court representing its value. The first is not a valid basis for the reasons stated above. I do not agree with NBS as to the second basis.

The testimony of the experts at the hearing makes it clear that there is a distinct difference of opinion between the appraisers for each party as to whether the condemnation and the resulting aboveground utilities (not permitted by the restrictive covenant) result in damage to NBS. This is a matter to be decided during the condemnation proceeding. I cannot find that a restrictive covenant always has value. The condemnation which permits the installation of aboveground utilities not permitted by the restrictive covenant raises an issue of damage, if any, to the residue of NBS's property as opposed to compensation for the taking of a property right. The thing for which NBS may be entitled to compensation under eminent domain is not the value of the extinguishment of the application of the restrictive covenant to the property taken, but the damage to the remainder of the property which remains subject to the restrictive covenant but now has property directly adjacent to it not subject to the restrictive covenant. On this, there can certainly be a difference of opinion.

NBS also argues that the offer was not bona fide because the VDOT appraiser certified that his appraisal complied with the Uniform Standards of Professional Appraisal Practice (USPAP) but the appraisal violated a standard of USPAP by not referring to the restrictive covenant. VDOT's appraiser testified that he is aware of the restrictive covenant, but considered it as creating no damage. Hence, he did not mention it in the appraisal. NBS asks me to find that, when a VDOT appraiser in a condemnation proceeding fails to follow a standard of USPAP in his statutorily required appraisal on an issue of value over which there is a legitimate dispute, the resulting offer cannot be considered bona fide. I decline to do so. This issue as to the restrictive covenant is a legitimate dispute more properly litigated in the condemnation proceeding.

For the foregoing reasons, NBS's Motion for a Temporary Injunction is denied.